UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

BRANDON SWAIN,

Plaintiff,

v.

TRUEVET SOLUTIONS MEDICAL CONSULTING LLC d/b/a TRUE VET SOLUTIONS,

Defendant.
_______________________________/

CASE NO.:

JURY TRIAL DEMANDED

# COMPLAINT

Plaintiff, Brandon Swain ("Plaintiff"), by and through undersigned counsel, sues defendant TrueVet Solutions Medical Consulting LLC d/b/a True Vet Solutions ("TVS"), and alleges as follows:

## INTRODUCTION

1. This action arises from the unlawful and deceptive practices of TVS who for years have preyed, and continue to prey upon, our disabled Veterans by charging them exorbitant and unlawful fees for assistance with the preparation, presentation, and/or prosecution of disability claims and appeals through the United States Department of Veterans Affairs ("VA"), in direct violation of federal law.

2. Moreover, TVS engages in unfair and deceptive trade practices and predatory collection practices in their unlawful scheme to induce disabled Veterans to retain their services, only to systematically take advantage of them throughout the VA disability claims process by intentionally ignoring federal regulations and laws which are designed to protect Veterans from overcharging "claim sharks."

3. Indeed, federal regulations and laws require organizations, agents or attorneys who provide consulting services or assistance to Veterans with preparing, presenting, or prosecuting VA disability claims and appeals to receive accreditation in order to be compensated for these services. These regulations and laws also grant the VA oversight authority to these accredited organizations, agents, or attorneys and require those individuals who assist Veterans to comply with certain standards and conduct, such as requiring fees for these services to be reasonable and commensurate to the services performed.

4. Veterans who become disabled after suffering a disease or injury during active military, naval, air, or space service, or whose preexisting conditions are aggravated by such service, may be entitled to monthly tax-free disability compensation benefits from the VA. *See* 38 U.S.C. §§ 1110, 1115, 1131; 38 C.F.R. §§ 3.4(a), (b)(1). To obtain these benefits, a Veteran must submit a formal disability claim for compensation to the VA. *See* 38 C.F.R. § 3.151(a).

5. This disability benefit claim process is intended to be non-adversarial and the Secretary of the VA also has a duty to make reasonable efforts to assist and obtain relevant evidence to help Veteran claimants with their disability benefits claim submissions. *See* 38 C.F.R. § 5103A.

6. Federal law restricts representation of claimants in the preparation, presentation, and prosecution of claims for VA disability benefits to individuals who have been accredited by the VA as a representative, agent, or attorney. *See* 38 C.F.R. § 14.629(b)(1).

7. The same regulatory framework prescribes both the circumstances under which an accredited representative, agent, or attorney may charge fees and the permissible amount of such fees. *See* 38 C.F.R. § 14.636.

8. Statutory law further prohibits the imposition of any fee for services associated with the preparation or filing of an initial claim for VA benefits. *See* 38 U.S.C. § 5904(c)(1).

9. Numerous Veterans Service Organizations ("VSOs") help Veterans initiate their VA disability benefits claims at no cost. Many Veterans rely on VSOs to file their initial claims, while others choose to proceed without formal representation or guidance from another organization, agent or attorney.

10. Following an adverse determination or a disability rating perceived as inadequate, a Veteran may seek further review of the VA's decision through an appeal. Veterans may also request an increased disability rating — and a corresponding increase in compensation — if their service-connected impairments have deteriorated. Throughout this process, some claimants continue to act *pro se*, others utilize assistance from VSOs, and some engage the services of VA-accredited agents or attorneys operating on a fee-for-service basis.

11. A fee for representation on a Veteran's benefits claim must be reasonable at all times. *See* 38 C.F.R. § 14.636(e). Pursuant to VA's standards of conduct for accredited individuals, it is a VA-accredited attorney or agent's responsibility to ensure that he or she does not "receive a fee that is clearly unreasonable or otherwise prohibited by law or regulation." 38 C.F.R. § 14.632(c)(5). The reasonableness review process under 38 C.F.R. § 14.636(i) can lead to the suspension or cancellation of accreditation under 38 C.F.R. § 14.633(c)(6), which specifically refers to "[c]harging excessive or unreasonable fees for representation as determined by VA."

12. For years, TVS, which **is not** accredited by the VA as representatives, agents, or attorneys, have systematically targeted vulnerable Veterans suffering from service-connected disabilities, charging them unreasonable and excessive fees for services that federal law expressly

provides must either be reasonable or be rendered free of charge by VA-accredited representatives, agents, or attorneys.

13. TVS's conduct violates 38 U.S.C.§ 5904(c)(1), which explicitly prohibits the charging of fees for assistance with preparing and filing an initial VA disability benefits claim, as well as ancillary federal laws protecting Veterans and consumers. *See e.g.,* 38 U.S.C. § 5904(c)(1); 38 C.F.R. § 14.636.

14. TVS's conduct and actions also violate 38 C.F.R. § 14.636(e) regarding unreasonable contingency fee agreements.

15. TVS's contracts and disclosures obscure the true nature of their fees, fail to explain that federal law prohibits charging for help with initial claims, and do not clearly disclose that comparable assistance is available at no cost from VA-accredited organizations, agents or attorneys.

16. TVS's fees are not solely limited to any actual preparation provided to the Veteran; instead, they apply to even pending disability claims, regardless of whether TVS assisted with, or participated in, those claims. This practice is deceptive and results in unreasonable, unlawful payments to TVS as well as TVS's unjust enrichment.

17. The VA Office of General Counsel ("OGC") has made clear that:

> [T]he phrase "practice before VA" signifies the acts of preparing, presenting, or prosecuting a claim for benefits under the laws administered by the VA. ***Preparing a benefits claim generally includes, but is not limited to, consulting with or giving advice to a claimant or potential claimant in contemplation of filing a benefits claim, gathering evidence in support of a benefits claim on behalf of a claimant or potential claimant, or filling out VA forms for their submission to VA***.

https://www.va.gov/ogc/accred_faqs.asp [https://web.archive.org/web/20260403211614/https://www.va.gov/ogc/accred_faqs.asp] (emphasis added).

18. Despite this unambiguous language, TVS intentionally attempts to deceive the public to garner more business and generate unlawful fees. TVS's business model is to provide consulting and advice to claimants contemplating filing a VA disability benefits claim, gather evidence in support of a VA disability benefits claim, and even fill out VA forms for their submission by claimants.

19. TVS's website is simply legal advice tailored to Veterans who are contemplating filing disability benefits claims. This information is provided to entice Veterans to believe TVS fully understands the VA disability claim process and that TVS can help them in this process. However, TVS provides this advice and information despite not being an accredited organization, agent, and attorney.

20. TVS's activities — including consulting and advising Veterans on claim strategy, gathering records or preparing medical evidence, and assembling VA forms — all fall squarely within these prohibited acts.

21. Plaintiff, a fellow Veteran, was an employee of TVS for several years and during such time, observed TVS's abuses of the system and attempted to bring such prohibitions to TVS's attention; however, in order to stifle such notification, TVS immediately terminated Plaintiff's employment. Such an action constitutes unlawful retaliation prohibited by the federal False Claims Act ("FCA"), 31 U.S.C. § 3730(h).

## THE PARTIES

22. Plaintiff is an individual that resides in the State of Maryland.

23. TVS is a Florida for profit limited liability company with its principal place of business in Clay County, Florida.

## JURISDICTION AND VENUE

24. This Court has federal question jurisdiction under 28 U.S.C. § 1331 in that Plaintiff brings this action seeking relief and monetary damages pursuant to 31 U.S.C. § 3730(h).

25. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as TVS is located in this District and the wrongful conduct was directed and undertaken within this District.

26. All conditions precedent to the maintenance of this action have been performed, have occurred prior to the institution, or been waived.

## FACTUAL BACKGROUND

### A. VA Legal Framework

27. The VA is organized into three administrations: (a) Veterans Benefit Administration ("VBA"); (b) Veterans Health Administration ("VHA"); and (c) National Cemetery Administration ("NCA"). The VBA provides a variety of disability compensation, pension, education, and more. The VBA is the administration involved in approving and awarding VA Disability Compensation.

28. The United States recognizes the effects of military service on Veterans that result in disabilities that are service connected and secondary service connected, from diseases, or injuries incurred or aggravated during active military service. The VA's disability program provides monthly VA disability compensation payments to veterans who suffered injuries during their military service or secondary to their military service.

29. The VA administers one of the largest disability compensation programs in the nation.

30. The VA reported providing $195 billion in compensation to over 6.9 million Veterans and their families in fiscal year 2025. Veterans and their families receive monthly disability compensation payments for partial or complete disabilities.

31. Federal law governing representation of Veterans before the VA reflects a strong public policy of protecting Veterans from exploitation in connection with their disability benefit claims.

32. Under 38 U.S.C. § 5904(c)(1), no fee may be charged, allowed, or paid for services provided to a Veteran before the date on which the VA provides written notice of its initial decision on a disability claim. In other words, no fees may be charged for services provided relating to a Veteran's initial disability claim. *See also* 38 U.S.C. § 5904(a). The VA's implementing regulation at 38 C.F.R. § 14.636 likewise prohibits fee agreements that violate this statutory bar.

33. VA guidance documents and specific correspondence to other fellow claims predators, with identical services as TVS, make clear that charging for work framed as "preparing the veteran" but directed toward claim development is still prohibited, as that distinction is considered a "distinction without a difference." The VA has explicitly stated that assistance with gathering documents, filling out forms, and other preparation work constitutes unlawful fee charging in violation of 38 U.S.C. § 5904(c)(1) and is therefore prohibited regardless of how the service is labeled or marketed to Veterans.

34. These statutory provisions reflect a clear Congressional intent to protect Veterans from being charged for assistance with initial disability claims, ensuring that Veterans receive free assistance from a VA-accredited representative—such as the Veterans of Foreign Wars

("VFW"), American Legion, Disabled American Veterans ("DAV"), and a VA-recognized VSO — when they file for VA benefits.

35. VA accreditation requirements under 38 U.S.C. § 5903 and 38 C.F.R. § 14.629 provide that only properly accredited attorneys, claims agents, or representatives of a recognized VSO may assist in the preparation, presentation, or prosecution of VA claims for compensation.

36. Specifically, individuals may not assist Veterans with preparing, presenting, and prosecuting claims for VA benefits unless they are one of the following: (1) an attorney licensed to practice law in at least one state; (2) an accredited claims agent employed by or representing a VSO; (3) a VA-accredited attorney; or (4) other representatives specifically approved by VA.

37. The accreditation process includes specific requirements designed to protect Veterans. To obtain accreditation as a claims agent, an individual must satisfy multiple requirements, including demonstrating good character and reputation, passing a written examination administered by the VA with a score of 75% or higher, being an employee or member of a VSO, undergoing character review by the VA's OGC, and meeting additional requirements specified by VA regulations.

38. The VA maintains public lists of accredited representatives and publishes Frequently Asked Questions ("FAQs") explaining that accredited representatives provide assistance free of charge to claimants for initial claims and may charge fees for appeals or increases to disability rating contingent on a favorable decision and subject to VA approval and fee schedules.

39. TVS and its principals **<u>are not accredited by the VA</u>** and therefore may not lawfully charge for any claim preparation, presentation, or prosecution services.

### B. TVS's Unlawful Business Model

40. TVS's standard fee model typically charges Veterans a fee equal to at least five times (500%) of the Veteran's monthly disability payment. For Veterans receiving a new disability rating through an initial claim (rather than an increase to an existing rating), TVS charges a fee equal to at least five times the monthly disability payment amount. Although charging a fee for assistance with an initial claim is prohibited, TVS's fee structure nevertheless results in exorbitant charges for individual Veterans, depending on the disability rating received and the monthly payment amount, for services for which charging a fee is expressly prohibited.

41. For Veterans who receive an increase to an existing disability rating (rather than an initial award), TVS also charges a fee equal to at least five times (500%) of the Veteran's monthly disability payment.

42. TVS's fee structure has no rational relationship to the actual services TVS provides or the actual work involved in assisting a Veteran with a claim or appeal.

43. Instead, TVS's fee is purely contingent on the Veteran receiving a VA benefit award or increase, and the amount is determined unilaterally by TVS based solely on the size of the benefit or increase, without any consideration of whether TVS materially contributed to that outcome or performed meaningful work in support of the Veteran's disability claim.

44. TVS's fee structure violates 38 U.S.C. § 5904 for at least four independent reasons: (1) it constitutes a fee charged for assistance with VA disability claims and benefits by unaccredited agents; (2) many of TVS's fees are charged for assistance with initial claims, which is explicitly prohibited under 38 U.S.C. § 5904(c)(1); (3) the fee is not subject to prior VA approval and does not meet the requirements for fee arrangements under 38 C.F.R. § 14.636; and, (4) TVS does not have accredited representatives, attorneys, or members of a VSO, and

therefore have no legal authority to charge any fee whatsoever for representing Veterans before the VA.

### C. Plaintiff's Background and Employment with TVS

45. Plaintiff is a disabled Veteran who honorably served in the United States Armed Services, specifically, in the United States Navy.

46. During Plaintiff's service, he suffered injuries for which he later sought a VA disability rating to receive disability benefits from the VA. Specifically, Mr. Swain's service related injuries resulted in a below-knee amputation and use of a prosthetic limb.

47. In wanting to give back to fellow Veterans, Plaintiff sought employment with TVS and was hired in the Summer of 2023 as a Veteran Advocate.

48. As a Veteran Advocate, Plaintiff was tasked with attending events on behalf of TVS, including conventions, events and local community meetings, in which Plaintiff would speak with Veterans and obtain basic information from the Veteran in the event they wished to engage TVS or wanted to receive additional information.

49. As an additional service, Plaintiff would provide the Veteran with his personal cellular telephone number in the event the Veteran had any additional questions or concerns throughout the process and would field such telephone calls as needed.

50. Prior to employment with TVS, Plaintiff also engaged TVS's services without knowing, and without being advised, that TVS was unaccredited and ineligible as a matter of law to provide services in furtherance of organizing, directing, instructing, guiding, advising, and assisting him through the VA disability benefits claim process including the preparation, presentation and prosecution of his VA claim.

**D. Plaintiff's Discovery of TVS's Unlawful Practices**

51. During Plaintiff's employment with TVS, Plaintiff's position and role mainly kept him at the very start of any Veteran's process with TVS. However, as a result of subsequent telephone calls from Veterans going through the process, including complaints, speaking with fellow employees and having concerns with how fellow disabled Veterans were being treated, Plaintiff researched the requirements for the services being performed before the VA and discovered the violations set forth in Paragraph 44 above.

52. In order to place TVS on notice, with the intent to change TVS's business practices, Plaintiff decided to inform TVS formally.

53. First, on July 18, 2026, Plaintiff provided written notification via a messaging application to his immediate supervisor, Harty Herbert ("Herbert"), that Veterans were being lied to about the fees being charged by TVS.

54. Subsequently, on July 19, 2026, Plaintiff submitted a formal written notification via email to Herbert and TVS's owners, Carrie Spangenburg ("Spangenburg") and Tracy Glover, in which Plaintiff placed TVS on notice of two issues, the first being the prohibited business practices set forth herein and simultaneously, given physical injuries to his residual limb and damaged caused to his prosthetic leg due to travel demands of his position, Mr. Swain requested a reasonable accommodation pursuant to the American with Disabilities Act ("ADA").

55. And again, on July 24, 2026, Plaintiff sent a written notification via a messaging application to his immediate supervisor that he had concerns with the paperwork being sent to the VA on behalf of Veterans.

56. In response, Plaintiff was invited to a Zoom conference held on July 27, 2026, that was attended by Plaintiff, Herbert, Spangenburg, and another employee of TVS. During this

conference, Plaintiff was not permitted to fully address the two issues identified in his July 19, 2026, communication. Instead, the meeting was quickly ended by TVS's representatives, and Plaintiff was issued a "Written Warning" by TVS following the meeting for disrespectful behavior.

57. Such warning was issued as a self-serving basis for, and to conceal the true intent of (i.e., discrimination and in retaliation for engaging in protected activity under the FCA and ADA[1]), the upcoming termination of Plaintiff's employment with TVS.

58. On July 28, 2026, the very next day, TVS terminated Plaintiff's employment.

**CAUSES OF ACTION**

**COUNT I – RETALIATION IN VIOLATION OF THE FCA**

59. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

60. At all relevant times, TVS was an employer within the meaning of 31 U.S.C. § 3730(h).

61. At all relevant times, Plaintiff was an employee and/or agent of TVS within the meaning of 31 U.S.C. § 3730(h).

62. The FCA, 31 U.S.C. §§ 3729–3733, prohibits, among other things, knowingly presenting, or causing to be presented, false or fraudulent claims for payment or approval to the United States, and imposes liability for other conduct proscribed by the Act.

63. Section 3730(h)(1) expressly protects an employee from retaliation because of lawful acts undertaken in furtherance of an action under the FCA or because of other efforts to stop one or more violations of the FCA. 31 U.S.C. § 3730(h)(1).

[1] Simultaneously with the filing of this action, Plaintiff is submitting a complaint to the U.S. Equal Employment Opportunity Commission regarding the ADA portion of his claims.

64. TVS's business activities included providing services to veterans in connection with claims for veterans' benefits administered by the VA.

65. TVS's fee structure violates 38 U.S.C. § 5904 for at least four independent reasons: (1) it constitutes a fee charged for assistance with VA disability claims and benefits by unaccredited agents; (2) many of TVS' fees are charged for assistance with initial claims, which is explicitly prohibited under 38 U.S.C. § 5904(c)(1); (3) the fee is not subject to prior VA approval and does not meet the requirements for fee arrangements under 38 C.F.R. § 14.636; and, (4) TVS does not have accredited representatives, attorneys, or members of a VSO, and therefore have no legal authority to charge any fee whatsoever for representing Veterans before the VA.

66. Plaintiff discovered facts concerning TVS's practices and reasonably concluded that TVS's conduct was not merely a violation of an internal company policy or a technical regulatory requirement, but potentially implicated federal restrictions governing the provision and payment of services in connection with federally administered VA benefits.

67. Plaintiff further understood that TVS's conduct potentially could result in false or fraudulent representations, claims, certifications, or other submissions to the United States, or could otherwise cause the United States to pay or approve claims or benefits based upon conduct that TVS was not legally authorized to perform or for which TVS was not legally entitled to charge.

68. Plaintiff's concerns therefore implicated the FCS and the expenditure, administration, and protection of federal funds and benefits.

69. Plaintiff engaged in protected activity within the meaning of 31 U.S.C. § 3730(h) by investigating, identifying, reporting, objecting to, and/or attempting to stop TVS's unlawful claims-related fee practices and the conduct associated with those practices.

70. Plaintiff requested and/or urged TVS to discontinue the challenged practice, comply with applicable federal law and VA regulations, and/or investigate the legality of the company's fee arrangements and claims-related activities.

71. Plaintiff's actions constituted lawful efforts to prevent, stop, and/or expose conduct that Plaintiff reasonably believed could result in violations of the FCA.

72. At the time Plaintiff engaged in these activities, Plaintiff had an objectively reasonable basis for believing that TVS's conduct potentially implicated the FCA.

73. Plaintiff's protected activity was sufficiently specific and substantive to put TVS on notice that Plaintiff was objecting to conduct that potentially implicated federal law and potential liability involving the United States, rather than merely raising a generalized workplace disagreement.

74. TVS knew of Plaintiff's protected activity.

75. TVS did not welcome Plaintiff's efforts to identify and stop the unlawful conduct. Instead, TVS retaliated against Plaintiff because of Plaintiff's protected activity.

76. The temporal proximity between Plaintiff's protected activity and TVS's termination demonstrates a causal connection between Plaintiff's protected activity and the adverse employment action.

77. TVS's stated reason for terminating Plaintiff, if any, was false, pretextual, and/or substantially motivated by Plaintiff's efforts to identify and stop conduct that Plaintiff reasonably believed violated federal law and potentially implicated the FCA.

78. TVS's termination of Plaintiff constituted discrimination and retaliation in the terms and conditions of Plaintiff's employment because of Plaintiff's lawful acts in furtherance of efforts to stop one or more violations of the FCA.

79. As a direct and proximate result of TVS's retaliatory conduct, Plaintiff suffered damages, including but not limited to lost wages, lost benefits, lost compensation and employment opportunities, loss of earning capacity, and other economic losses.

80. Plaintiff has also suffered special damages resulting from TVS's retaliatory conduct, including emotional distress, consequential financial losses, expenses incurred as a result of the termination, and other compensable losses.

81. Pursuant to 31 U.S.C. § 3730(h)(2), Plaintiff is entitled to all relief necessary to make Plaintiff whole, including, where appropriate, reinstatement with the same seniority Plaintiff would have had but for the retaliation, twice the amount of lost back pay, interest on the back pay, compensation for special damages sustained as a result of the discrimination, and reasonable attorneys' fees and litigation costs.

82. TVS's conduct was willful, knowing, and/or undertaken with reckless disregard for Plaintiff's federally protected rights.

**COUNT II – VIOLATION OF THE FLORIDA PRIVATE WHISTLEBLOWER ACT**

83. Plaintiff realleges and incorporates by reference the allegations contained Paragraphs 1 through 58 of this Complaint as though fully set forth herein.

84. TVS was Plaintiff's employer within the meaning of the Florida Private Whistle-Blower Act, Fla. Stat. §§ 448.101–448.105.

85. Plaintiff was employed by TVS until TVS terminated Plaintiff's employment.

86. TVS's fee structure violates 38 U.S.C. § 5904 for at least four independent reasons: (1) it constitutes a fee charged for assistance with VA disability claims and benefits by unaccredited agents; (2) many of TVS' fees are charged for assistance with initial claims, which is explicitly prohibited under 38 U.S.C. § 5904(c)(1); (3) the fee is not subject to prior VA

approval and does not meet the requirements for fee arrangements under 38 C.F.R. § 14.636; and, (4) TVS does not have accredited representatives, attorneys, or members of a VSO, and therefore have no legal authority to charge any fee whatsoever for representing Veterans before the VA.

87. Plaintiff discovered TVS's unlawful activity, policy, and/or practice.

88. Plaintiff provided notice to TVS of the foregoing violations.

89. Plaintiff's communications expressly objected to and/or sought to stop TVS's unlawful activity, policy, and/or practice.

90. Shortly after Plaintiff provided notice of TVS's violations of federal law, TVS terminated Plaintiff's employment.

91. TVS terminated Plaintiff because Plaintiff objected to TVS's unlawful activity, policy, and/or practice and because Plaintiff provided notice concerning TVS's violations of federal law.

92. TVS's termination of Plaintiff therefore constituted retaliatory personnel action prohibited by Fla. Stat. § 448.102(3).

93. The close temporal proximity between Plaintiff's protected conduct and TVS's termination demonstrates that Plaintiff's protected activity was a substantial and motivating reason for TVS's retaliatory personnel action.

94. As a direct and proximate result of TVS's unlawful retaliation, Plaintiff has suffered and continues to suffer damages, including lost wages, lost employment benefits, loss of earning capacity, and other economic damages.

95. Plaintiff has also suffered non-economic damages, including emotional distress, humiliation, inconvenience, and mental anguish, to the extent recoverable under applicable law.

96. Pursuant to Fla. Stat. § 448.103, Plaintiff is entitled to all relief available under the Florida Private Whistle-Blower Act, including compensatory damages and appropriate equitable relief.

97. Plaintiff is entitled to recover reasonable attorney's fees and costs pursuant to Fla. Stat. § 448.104.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief against TVS:

A. Front pay in lieu of reinstatement;

B. Twice the amount of Plaintiff's lost back pay and employment-related compensation;

C. Pre-judgment and post-judgment interest as permitted by law;

D. Compensation for special damages sustained as a result of TVS's retaliation;

E. Compensation for all other damages and relief necessary to make Plaintiff whole;

F. Reasonable attorneys' fees and litigation costs pursuant to 31 U.S.C. § 3730(h)(2) and Fla. Stat. § 448.104;

G. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

Date: August 21, 2026

Respectfully Submitted,

/s/ Matthew M. Fischer
Matthew M. Fischer, Esq.
Florida Bar No. 40997
MATTHEW M. FISCHER, P.A.
110 E. Broward Blvd, Suite 1700
Fort Lauderdale, FL 33301
Tel: (954) 859-5558
Fax: (954) 859-5525
matt@fischerlawpa.com

*Counsel for Plaintiff*